UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06cv-11-R

KIRK THOMAS, as Executor of the Estate of
DORIS V. THOMAS                                                                                     PLAINTIFF

v.

BLUE CROSS & BLUE SHIELD OF ALABAMA
and BELLSOUTH                                                                                      DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants' Motion for Summary Judgment (Docket #15). The Plaintiff, Kirk Thomas ("Thomas"), as the Executor of the Estate of his mother, Doris V. Thomas ("Ms. Thomas"), has filed a Cross-Motion for Summary Judgment (Docket #16). The Defendants, Blue Cross & Blue Shield of Alabama ("BCBSAL") and BellSouth, have responded to the Plaintiff's motion (Docket #17), and the Plaintiff has responded to the Defendants' motion for summary judgment (Docket #18). This matter is now ripe for adjudication. For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED**, and the Plaintiff's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

This matter concerns a dispute arising under the Employee Retirement Income Security Act ("ERISA"), §502(a), regarding a decision by the Defendant, BCBSAL, to deny health care benefits to the mother of the Plaintiff, Ms. Thomas. Mrs. Thomas was a participant in the BellSouth Retiree Medical Assistance Plan ("the Plan") as result of her husband's employment with the Defendant BellSouth. The Plan provides discretion to BCBSAL to determine all benefit claims made by Plan participants, including the appeals process if a participant disputes a denial of benefits. In addition, the Plan excludes "[c]harges for custodial care or rest cures."

In May 2004, Ms. Thomas was admitted into the Haws Memorial Nursing and Rehabilitation Center ("Haws") in Fulton County, Kentucky. While there, Ms. Thomas received various medical treatments, some of which was covered by the Plan. The covered benefits included a thirty (30) day period from May 19, 2004, through June 18, 2004, when Ms. Thomas was covered by the Plan for physical and occupational therapy purposes. At the end of the thirty (30) day period, BCBSAL Case Manager Badnette Tyus ("Tyus") approved an additional seven (7) of coverage under the Plan, approving benefits through June 24, 2004. The approval by Tyus stipulated that Haws, on behalf of Ms. Thomas, would have to provide a "concurrent review" at the end of the additional seven (7) days on June 25, 2004.

On July 8, 2004, Ms. Thomas received notice that the Plan would not cover her treatment at Haws after June 24, 2004. The Defendants noted that Ms. Thomas' care no longer qualified for benefits because her stay at Haws no longer met the required medical necessity criteria for skilled nursing to be covered under the Plan because the nature of her stay at Haws was more custodial rather than therapeutic. That same day, Haws Business Manager Janet Creason ("Creason") contacted BCBSAL, on behalf of Ms. Thomas, to request additional days and appeal the decision by BCBSAL. After Creason's contact, BCBSAL referred the case to Physician Advisor Dr. Kathryn Kartus ("Dr. Kartus"), so that she could confer with Ms. Thomas' treating physician, Dr. John Ragsdale ("Dr. Ragsdale") and review Ms. Thomas' record. Dr. Kartus determined that the stay beyond June 24, 2004, did not meet the medical criteria required for skilled nursing, and therefore, the denial of benefits was appropriate.

On November 22, 2004, Creason sent another letter to BCBSAL appealing the period from June 25, 2004 through July 8, 2004. Creason indicated that Ms. Thomas was not medically

stable during that time period, and that therapy was discontinued because progress could not be made during that time. In addition, Creason stated that Ms. Thomas had problems with her blood sugar level between June 25, 2004 and July 8, 2004, but that therapy was resumed when Ms. Thomas became stable, and thereafter, Ms. Thomas was discharged to another facility. In denying Ms. Thomas' appeal for a second time, BCBSAL noted that the records indicated that Ms. Thomas had reached her maximum potential through the therapy provided at Haws. In addition, BCBSAL noted that Ms. Thomas' therapy had made little progress right before therapy ceased at the end of June 2004. During the second appeal, BCBSAL also examined the period after July 8, 2004, until September 22, 2004. BCBSAL Physician Advisor Dr. Jane Gehlsen ("Dr. Gehlsen") also determined that Ms. Thomas did not meet the criteria for coverage under the Plan for her stay at Haws. Ms. Thomas passed away on November 12, 2004.

On April 4, 2005, Plaintiff Kirk Thomas, as the Executor of the Estate of his mother, requested an additional appeal and reevaluation of the decision that denied coverage for the service to his mother from June 25, 2004, onward. On April 21, 2005, BCBSAL sent a letter to the Plaintiff explaining to him that its decision was made because Ms. Thomas had made "little or no progress in her therapy and her care was mainly custodial in nature." BCBSAL informed Thomas that care, which is mainly custodial in nature, is not payable under the Plan.

The Plaintiff brought suit on behalf of the estate of his mother contending that the denial of benefits was unreasonable and irrational. In addition, the Plaintiff submits the affidavit of Dr. Ragsdale to support this argument; however, his affidavit is outside the Administrative Record ("AR"). The Defendants assert that their decision to deny coverage was neither arbitrary nor capricious, and therefore, should be upheld by the Court upon review.

**STANDARD**

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit held that §502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions. *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609, 617 (6th Cir. 1998). Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies. *Id.* at 619; *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the parties agree that the Plan grants its administrators such discretion. Accordingly, the Court shall apply an arbitrary and capricious standard of review.

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1071 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it. *Id.* In evaluating those decisions, this Court must consider only the evidence before the administrator at the time, and must account for potential conflicts of interest. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988); *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp.2d 724, 727 (W.D. Ky. 2001) (citing *Firestone Tire and Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998)). "The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged

lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges." *Wilkins*, 150 F.3d at 619.

## DISCUSSION

The Sixth Circuit Court of Appeals, in *Miller v. Met Life Ins. Co.*, states that "[a]n ERISA plan administrator's denial of benefits is not arbitrary and capricious as long as it is rational in light of the plan's provisions." 925 F.2d 979, 984 (6th Cir. 1991).  Here, the Plan did not cover care that is custodial.  Upon reviewing the medical record of Ms. Thomas at least three (3) times, including appeals, the Defendants determined that the Plan no longer covered her stay at Haws from June 25, 2004 through July 8, 2004, and thereafter, because she had reached her maximum potential from the physical therapy and she was not making much progress through the therapy.  After making these determinations BCBSAL reasoned that Ms. Thomas' care at Haws no longer qualified for coverage under the Plan because her care at Haws was more custodial in nature.

BCBSAL reached these conclusions by examining various document from within the AR. On June 16, 2004, progress notes of Ms. Thomas state that "the patient continues to make little progress secondary to severely compromised cardiopulmonary function."  In addition, on June 23, 2004, progress notes of Ms. Thomas state "the patient may have reach[ed] maximum benefit from skilled physical therapy at this time."  Shortly thereafter, from June 25, 2004 through July 8, 2004, Haws stopped providing therapy to the patient.  Ms. Thomas was discharged from Haws and relocated to another facility shortly after July 8, 2004.

On July 13, 2004, BCBSAL's Physician Advisor, Dr. Kartus, spoke with Ms. Thomas'

treating physician, Dr. Ragsdale. Dr. Ragsdale informed Dr. Kartus that he believed that Ms. Thomas was making progress. However, Dr. Kartus pointed out to Dr. Ragsdale that the notes and the records of Ms. Thomas provided by Haws indicated that she was not making progress. The AR indicates that Dr. Kartus noted that Dr. Ragsdale would provide additional records regarding the progress of Ms. Thomas after consulting with other personnel at Haws, however, those records were never provided.

In looking at the AR as well as the time line of events, the decisions by the Defendants to deny coverage from June 25, 2004 through July 8, 2004, and thereafter, were neither arbitrary nor capricious. Based on what the Defendants knew at the time they made their initial decision to deny coverage, and the subsequent appeals, the Defendants relied upon the medical records and notes of Ms. Thomas, which indicated that therapy was not working on her and that it had been suspended during the time period in question. Without additional medical records that stated the contrary, the Defendants were left only with what was provided to them by Haws. In examining these records, the Defendants made a reasonable decision to deny coverage. Accordingly, the decision by the Defendants to deny coverage was neither unreasonable nor irrational.

Further, the affidavit of Dr. Ragsdale submitted by the Plaintiff cannot be considered by the Court. As stated by the Sixth Circuit Court of Appeals in *Wilkins*, "[t]he district court may consider evidence outside of the administrative record *only* if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 619; *see also Storms v. Aetna Life Ins. Co.*, 156 Fed.Appx. 756, 759 (6th Cir. 2005); *Moore v. LaFayette Life*

*Ins. Co.*, 458 F.3d 416, 430-31 (6th Cir. 2006).  Here, the Plaintiff has not made a due process challenge, but instead has challenged the discretion used by the Defendants to deny coverage.  Accordingly, the Court may not consider the affidavit of Dr. Ragsdale in reaching its decision.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED** and the Plaintiff's Motion for Summary Judgment is **DENIED**.  This matter is hereby **DISMISSED**.

An appropriate order shall issue.